UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
BANK OF THE WEST,

                          Plaintiff,                      CV 11-4139 (ADS) (ETB)

   -against-                                        REPORT AND
                                                                            RECOMMENDATION

THE SAILING YACHT "SERENDIPITY", HER
MAST, SAILS, RIGGING, ENGINE, ANCHORS,
FURNITURE, EQUIPMENT, AND OTHER
APPURTENANCES, IN REM,

   -and-

ST. JOSEPH'S BOATWORKS INC d/b/a SAG
HARBOR YACHT YARD AND THOMAS G.
BALDWIN, JR., IN PERSONAM,

                          Defendants.
----------------------------------------------------------------------x

TO THE HONORABLE ARTHUR D. SPATT, UNITED STATES DISTRICT JUDGE:

       Cross-claim plaintiff St. Joseph Boatworks, Inc. d/b/a Sag Harbor Yacht Yard (hereinafter "SHYY") filed a cross-claim against defendant Thomas G. Baldwin Jr. ("Baldwin") on September 7, 2011, seeking to recover unpaid fees related to the docking, storage, and maintenance by SHYY of a yacht owned by defendant Baldwin, known as the Serendipity. Baldwin failed to answer the Complaint and SHYY's cross-claims, and otherwise failed to appear in this action. Cross-claim plaintiffs moved for a default judgment and for damages, attorney's fees, and costs on April 5, 2012, and this motion was referred to the undersigned on May 11, 2012 for a Report and Recommendation. SHYY seeks a default judgment; damages in the amount of $86,465.00; and attorney's fees and costs in the amount of $44,159.39.

1

## FACTS

An inquest was held before the undersigned on September 24, 2012. Baldwin did not appear. SHYY's claim for damages rests on Baldwin's failure to pay $86,465.00 in charges in connection with the storage, maintenance, and repair of Baldwin's yacht, the Serendipity.

Louis Grignon ("Grignon"), the owner, general manager, and service writer of SHYY, testified that SHYY entered into an agreement with Baldwin for the storage and care of the Serendipity in the spring of 2007. (Transcript of Sept. 24, 2012 Inquest ("Tr.") 11, 12; Verified Answer, Crossclaim and Counterclaim ("Answer") ¶ 6.) Baldwin initially entered into a Summer Slip Agreement and Storage Agreement with SHYY in 2007, and in June of 2009 requested that SHYY take care of the Serendipity in his absence. (Answer ¶ 6.) Grignon stated that, under the terms of the agreement, SHYY was authorized to perform a variety of services for the Serendipity, including spring commissioning, summer service and repairs, fall winterization, winter storage, and all necessary repairs if and when the need for such repairs arose. (Tr. 12.) Grignon further testified that the Serendipity was kept at SHYY from the spring of 2007 through the fall of 2011, by virtue of an oral agreement between Mr. Baldwin and SHYY. (Tr. 12.)

Grignon testified that in August of 2009, Baldwin came to SHYY to use the yacht and failed to disconnect the fresh water hose from the internal freshwater system. (Tr. 13.) This caused the Serendipity to take on water, and it began to sink. (Tr. 13.) In order to salvage the Serendipity, SHYY pumped all of the water out of the Serendipity, took it out of the water, checked it thoroughly to determine what had gone wrong, and then performed all repairs necessary to restore the Serendipity to its previous condition. (Tr. 14.) Although SHYY

2

contacted Baldwin immediately regarding this incident, neither Baldwin nor his insurance company ever responded. (Tr. 15.)

In addition to the major repair conducted in August of 2009, SHYY also conducted regular maintenance on the Serendipity in accordance with SHYY's agreement with Baldwin. (Tr. 15.) Services performed included general upkeep and maintenance, commissioning, winterization and de-winterization, and storage. (Tr. 15-19.) Baldwin was continuously invoiced for these services, and neither paid nor responded. (Tr. 15-19.) In all, the statements reflect $86,465.00 for services rendered by SHYY. (Affidavit of Louis Grignon in Support of Damage Statement ("Grignon Aff.") ¶ 3.) Additionally, SHYY has incurred $42,480.00 in attorney's fees and $1,679.39 in costs in relation to this motion. (Grignon Aff. ¶ 4; Grignon Aff. Exhibit 5; Supplemental Attorney's Affirmation in Support of Request for Attorney's Fees dated September 25, 2012 ("Supp. Atty. Aff.") ¶ 3; Further Supplemental Attorney's Affirmation in Support of Request for Attorney's Fees dated January 16, 2013 ("Further Supp. Atty. Aff.") ¶ 2.)

SHYY therefore requests that the Court render a default judgment in its favor against Baldwin, and award it a total of $86,465.00 in damages and $44,159.39 in attorney's fees and costs.

## DISCUSSION

I.  Default Judgment

When a party fails to appear or defend an action by an adverse party, a default may be entered against the non-appearing party. See FED. R. CIV. P. 55. After entry of the default, "a defendant is deemed to have admitted all of the well-pleaded allegations raised in the complaint pertaining to liability." Time Warner Cable of N.Y. v. Rivera, No. 99-2339, 1995 WL 325429,

at *2 (E.D.N.Y. June 8, 1995); see also Time Warner Cable of N.Y. v. Barbosa, No. 98-3522, 2001 WL 118608, at *5 (S.D.N.Y. Jan. 2, 2001) (quoting Transworld Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971)).

In the within action, SHYY filed its cross-claim against Baldwin on September 7, 2011. A copy of the cross-claim was personally served on Baldwin on November 9, 2011 at his address in Charlottesville, Virginia. (Affidavit of Service by Richard S. Daub, dated Nov. 14, 2011.) On January 27, 2012, the Clerk of the Court certified that Baldwin had failed to answer the Complaint or otherwise appear in this action. Baldwin failed respond to service of this Court's Order of May 16, 2012 scheduling the inquest, and failed to appear at the inquest on September 24, 2012. Accordingly, I recommend that a default judgment be entered against the defendant and cross-claim defendant, Thomas G. Baldwin, Jr.

II.     Calculation of Damages

Following the grant of a default judgment, damages must be proven, usually "at an evidentiary proceeding at which the defendant is afforded an opportunity to contest the amount claimed." Rivera, 1995 WL 325429, at *2 (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1993)). SHYY "is entitled to all reasonable inferences from the evidence it offers." Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The party seeking to recover damages "bears the burden of establishing its entitlement to recovery and thus must substantiate its claims with evidence to prove the extent of its damages." Tianjin Longxing (Group) Co. v. Trade Am Int'l, Inc., No. 05 Civ. 0251, 2011 U.S.

4

Dist. LEXIS 47622, at *7 (S.D.N.Y. May 4, 2011) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)).

SHYY's crossclaims against Baldwin initially included (1) a salvage lien; (2) a maritime lien; (3) a statutory possessory lien on the Serendipity; and (4) a claim for unjust enrichment and quantum meruit. (Answer ¶¶ 18, 20, 23, 25-27.) SHYY has since released all salvage lien claims against the vessel as part of its settlement with plaintiff Bank of the West. (See Order of Judge Spatt dated April 2, 2012.) SHYY's claims against Baldwin for unjust enrichment and quantum meruit are therefore all that remain.

### A) Unjust Enrichment and Quantum Meruit

"Applying New York law, [a court] may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005). A party prevailing on a claim for unjust enrichment is entitled to recover "the reasonable value of the services rendered." Giordano v. Thomson, 564 F.3d 163, 170 (2d Cir. 2009) (quoting Collins Tuttle & Co. v. Leucadia, Inc., 153 A.D. 2d 526, 544 N.Y.S.2d 604, 605 (N.Y. App. Div. 1st Dep't 1989)). The measure of damages on a claim for quantum meruit is likewise limited to "the reasonable value of the services." Mid-Hudson Catskill Rural Migrant Ministry, Inc., 418 F.3d at 175 (quoting Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000)). Consequently, SHYY bears the burden of establishing the reasonable value of the services it performed for Baldwin in order to recover under its quasi contract claims.

B) <u>Damages</u>

In support of its claim for damages, SHYY has provided testimony and evidence to establish the scope of work performed on Baldwin's behalf. In particular, SHYY has produced invoices, verified by Grignon, establishing that Baldwin has failed to pay for a variety of services rendered, and owes SHYY a total of $86,465.00 in fees, costs, and finance charges. (<u>See</u> Hearing Exhibits 1-4.) I find that these charges are reasonable for the work and services provided. Consequently, it is the recommendation of this Court that SHYY be awarded $86,465.00 in damages as compensation for services rendered.

III. <u>Request for Recovery of Costs and Attorney's Fees</u>

I have reviewed the Affidavit in Support of Damage Statement submitted by SHYY, requesting a total of $32,684.39 in attorney's fees and costs (<u>see</u> Grignon Aff. at ¶ 5), as well as the attorney affirmation submitted following the inquest requesting an additional $11,475.00 in attorney's fees related to counsel's preparation for and attendance at the inquest <u>see</u> Further Supp. Atty. Aff. at ¶ 3). Both the affidavit and the attorney affirmation are supported by contemporaneous time records. (<u>See</u> Grignon Aff. at Exhibit 5; Further Supp. Atty. Aff. at Exhibit 2.) The time spent and hourly rates described for the services of legal personnel who worked on this matter are reasonable. I therefore recommend that attorney's fees be awarded in the sum of $42,480.00, plus costs for research, service, and mail fees of $1,679.39, for a total award of $44,159.39.

## RECOMMENDATION

For the foregoing reasons, and based on the evidence and affidavits submitted, the undersigned recommends that the court award cross-claim plaintiff St. Joseph's Boatworks Inc. d/b/a Sag Harbor Yacht Yard, the following: (1) a default judgment against cross-claim defendant Thomas G. Baldwin, Jr. (2) $86,465.00 in damages; and (2) attorney's fees and costs in the sum of $44,159.39, for a total award of $130,624.39.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of entry of this report. Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), and 72(b); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 506 U.S. 1038 (1992); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Counsel for St. Joseph's Boatworks Inc. d/b/a Sag Harbor Yacht Yard is directed to serve a copy of this report on all parties upon receipt.

SO ORDERED.
Dated: Central Islip, New York
      January 17, 2013

                                          _____/s/_____
                                          E. THOMAS BOYLE
                                          United States Magistrate Judge