**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
BANK OF THE WEST

<table>
<tr><td>Plaintiff,</td><td>**MEMORANDUM OF**<br>**DECISION & ORDER**</td></tr>
<tr><td>-against-</td><td>11-CV-4139 (ADS)(AYS)</td></tr>
</table>

THE SAILING YACHT SERENDIPITY, her
masts, sails, rigging, engines, anchors, furniture,
equipment, and other appurtenances, *in rem*, and
THOMAS G. BALDWIN, Jr., *in personam*,

Defendants.
-------------------------------------------------------X

<u>**APPEARANCES:**</u>

**The Law Office of Jonathan A. Chase**
*Attorney for the Plaintiff*
One Taft Place, Po Box 367
Cornwall on Hudson, NY 12520

**SPATT, District Judge**.

    This case arises from allegations that the Defendant Thomas G. Baldwin, Jr. ("Baldwin")

failed to perform his obligations under a May 14, 2005 Retail Installment Sales Contract and

Security Agreement (the "Agreement") that he entered into with the Plaintiff Bank of the West

(the "Plaintiff") to secure financing to purchase the Sailing Yacht Serendipity ("Serendipity").

    On August 25, 2011, the Plaintiff commenced this action against the Defendants

Serendipity, her masts, sails, rigging, engines, anchors, furniture, equipment and other

appurtenances, *in rem*; St. Joseph's Boatworks, Inc., d/b/a Sag Harbor Yacht Yard ("St.

Joseph"); and Baldwin, *in personam*.

    On April 2, 2012, the Court so-ordered a stipulation by the Plaintiff and St. Joseph

voluntarily dismissing the Plaintiff's claims against St. Joseph.

Presently before the Court is a motion by the Plaintiff for a default judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55 and for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the Court grants in part and denies in part the Plaintiff's motion.

## I. DISCUSSION

### A. The Underlying Facts

#### 1. The Parties

The Plaintiff is a California corporation with its principal place of business in San Francisco. (Verified Compl. at ¶ 2.)

Serendipity is a "Sabre model 286 sailboat, approximately 38 feet in overall length and 13 feet in breadth." (Id. at ¶ 3.)

Baldwin is a resident and domiciliary of Virginia. (Id. at ¶ 6.)

#### 2. The Agreement and the First Mortgage

On May 14, 2005, Baldwin entered into the Agreement with the Plaintiff to secure $240,000 in financing to purchase the Serendipity. (Verified Compl. Ex. A.) In exchange for receiving the financing, Baldwin agreed to pay the Plaintiff the principal amount of $240,000 plus an interest rate of 6 % a year. Based on this rate, the Agreement requires Baldwin to make monthly payments to the Plaintiff in the amount of $1,719.43 for a period of 240 months. (Id.) In addition, Baldwin agreed to give the Plaintiff a First Mortgage on the Serendipity in the total amount of $240,000.00. (Verified Compl., Ex. B.)

The Agreement imposes additional obligations on Baldwin, including requiring him to:

(i) "defend our interests in the property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else";

(ii) "provide us with any additional information we may require to keep our claim
to the Property ahead of the claim of anyone else";
(iii) "keep the Property in your possession in good condition and repair";
(iv) "not attempt to sell the Property . . . or otherwise transfer any right in the
Property to anyone else, without our prior written consent"; and
(v) "notify us of any loss or damage to the Property."

(Id.)

If Baldwin failed to perform any of the above-obligations, the Agreement requires him
to "pay [the Plaintiff's] costs for collecting amounts owing, including, without limitation, fees for
repossession, repair, storage and sale of the Property securing this Contract." (Id.) In addition,
the Agreement states that in the event of a default, the Plaintiff may "require [Baldwin] to
immediately pay [the Plaintiff], subject to any refund required by law, the remaining unpaid
balance of the amount financed, credit service charges and all other agreed charges." (Id. at 1,
2.)

Finally, the Agreement requires Baldwin "to buy property insurance on the Property
protecting against loss and physical damage." (Id. at 2.) If Baldwin fails to do so, the
Agreement provides that the Plaintiff "may obtain insurance" and can "add the premium for this
insurance to the amount [Baldwin] owe[s] [to the Plaintiff under the Agreement]." Id.

On May 16, 2005, Baldwin executed a First Mortgage on the Serendipity in favor of the
Plaintiff in the amount of $240,000.00 to secure the debt owed by Baldwin to the Plaintiff under
the Agreement. (Verified Compl., Ex. B.)

On May 25, 2005, the Plaintiff perfected the First Mortgage by filing it with the U.S.
Coast Guard National Vessel Documentation Center. (Verified Compl. at ¶ 11.)

### 3. The Services Performed by St. Joseph

In 2007, Baldwin entered into a Summer Slip and Storage Agreement with St. Joseph to store the Serendipity at a marina and boat yard owned by St. Joseph in Sag Harbor, New York. (St. Joseph Answer at ¶ 6.) Prior to 2007, it is not clear where the Plaintiff kept the Serendipity.

From 2007 to 2009, Baldwin and St. Joseph entered into a series of continuing contracts pursuant to which St. Joseph agreed to perform certain services on the Serendipity, such as, the "annual commissioning, berthing, decommissioning and storage of the [Serendipity]." (Verified Compl. at ¶ 13.)

In September 2009, St. Joseph discovered a leak in the Serendipity and informed Baldwin. (St. Joseph Answer at ¶ 9.) Baldwin did not take any action to repair the Serendipity, nor did he contact his insurer, or the Plaintiff regarding the damage. (Id. at ¶¶ 10–13.) St. Joseph "utilized its own equipment and personnel to pump out the vessel and prevent further damage and deterioration." (Id. at ¶ 10.) Following, its repairs, Baldwin agreed that the services performed by St. Joseph were "salvage in nature" and agreed to pay St. Joseph for its work. (Id. at ¶ 14.) However, Baldwin never paid St. Joseph for its services. (Id. at ¶ 21.)

In December 2009, St. Joseph filed a mechanic's lien on the Serendipity pursuant to N.Y. Lien Law § 184. (Verified Compl. at ¶ 12.) In February 2010, St. Joseph filed an action to foreclose on its lien and on the basis of an extrajudicial sale acquired a document title to the Serendipity. (Id. at ¶¶ 14–15.) Baldwin did not inform the Plaintiff that St. Joseph had filed a lien; had initiated foreclosure; and acquired title to the Serendipity. (Id.)

On March 2, 2010, St. Joseph attempted to sell the Serendipity. (Id. at ¶ 15.) When doing so, St. Joseph discovered that the First Mortgage held by the Plaintiff had not been abrogated. (Id. at ¶ 16.) As a result, the Serendipity was not sold. (See id.)

After December 2010, Baldwin stopped making monthly payments to the Plaintiff under the First Mortgage. (Id. at ¶ 10.)

**B. The Procedural Background**

This case has a long and complex procedural history. On August 25, 2011, the Plaintiff commenced this action against the Defendants. It asserted (i) an *in rem* claim against the Serendipity and an *in personam* claim against Baldwin; (ii) a claim seeking a declaratory judgment that the title to the Serendipity acquired by St. Joseph is null and void; and (iii) a conversion claim against St. Joseph.

On the same day, the Clerk of the Court issued a warrant for the arrest of the Serendipity pursuant **to** Admiralty Rule C(3)(a), which directed the United States Marshal for the Eastern District of New York to (i) "detain" the Serendipity through a "duly-appointed" substituted custodian until a further order of this Court resolved the Plaintiff's *in rem* claims; and (ii) to serve a copy of the complaint, the warrant for arrest; and a summons on Baldwin.

On September 7, 2011, St. Joseph filed an answer and the following cross-claims: (i) a claim against Baldwin, *in personam*, and against the Serendipity, *in rem*, seeking $56,000 in damages for mechanic services rendered by St. Joseph on the Serendipity; (ii) an *in rem* claim against the Serendipity and an *in personam* claim Baldwin pursuant to 46 U.S.C.A. § 31301(4) to enforce a maritime lien for necessaries in the amount $68,000; (iii) a claim under N.Y. Lien Law § 184 for a statutory possessory lien on the Serendipity; and (iv) a claim against Baldwin for unjust enrichment.

On September 19, 2011, Jonathan Chase ("Chase"), the Plaintiff's counsel, filed an affidavit of service stating that on September 7, 2011, the United States Marshal served a copy of the warrant, the complaint, and summons at Baldwin's place of business on Cybil Polacke, a

financial manager at TMO Global Logistics LLC, a firm then-owned by Baldwin. Chase further stated that he sent a copy of the original summons, complaint, and motion for the issuance of a warrant of arrest of the Serendipity to the Plaintiff's actual place of business by first class mail.

On November 15, 2011, the United States Marshal executed the warrant of arrest on the Serendipity. The Serendipity was placed in the custody of Matt Palermo, a substitute custodian, and moved from the Sag Harbor Yacht Yard in Sag Habor, New York, to the Brewer Yacht Yard in Greenport, New York, where it has remained after the United States Marshal detained it.

Pursuant to a March 30, 2012 stipulation, the Plaintiff agreed to voluntarily dismiss its claims against St. Joseph, and St. Joseph agreed to dismiss its three *in rem* claims against the Serendipity. On April 2, 2012, the Court so-ordered this stipulation. The stipulation did not affect the *in personam* claims by both parties against Baldwin and the *in rem* claim by the Plaintiff against the Serendipity.

On January 17, 2013, United States Magistrate Judge E. Thomas Boyle issued a report and recommendation recommending that the Court award the following damages to St. Joseph: (1) a default judgment against Baldwin; (2) $86,465.00 in damages; and (3) attorneys' fees and costs in the sum of $44,159.39 for a total award of $130,624.39. On February 28, 2013, the Court adopted the report and recommendation of Judge Boyle in its entirety.

Following the Court's February 28, 2013 Adoption Order, the only claims remaining in this case are two claims by the Plaintiff: (1) an *in rem* claim against the Serendipity; and (2) an *in personam* claim against Baldwin.

On May 17, 2013, the Plaintiff filed a notice of this action and arrest in Newsday. No party has interposed any claim against the Serendipity.

Baldwin has not appeared in this action.

## II. DISCUSSION

### A. Legal Standards

Presently before the Court is the Plaintiff's motion for a default judgment against the

Defendants pursuant to Fed. R. Civ. P 55 and summary judgment on its claims pursuant to Fed.

R. Civ. P 56.

With respect to the Rule 56 branch of the Plaintiff's motion, Local Rule 56.1 states:

[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal
Rules of Civil Procedure, there shall be annexed to the notice of motion a
separate, short and concise statement, in numbered paragraphs, of the material
facts as to which the moving party contends there is no genuine issue to be tried.
Failure to submit such a statement may constitute grounds for denial of the
motion.

Here, the Plaintiff has not filed a statement of facts pursuant to Local Rule 56.1 or a

memorandum of law in support of its motion. Rather, the Plaintiff filed a notice of motion and

an affidavit by April Curtis, an Assistant Vice President of the Plaintiff, regarding potential

damages. As such, the Court finds that the Plaintiff's motion is more appropriately construed as

a Rule 55 motion for a default judgment, and not a Rule 56 motion for summary judgment.

Accordingly, the Court denies the Plaintiff's motion without prejudice to the extent it relies on

Rule 56.

As to the Plaintiff's Rule 55 motion, courts in this Circuit follow a two-step process for

issuing default judgments. See New York v. Green, 420 F.3d 99, 104 (2nd Cir. 2005). The first

step is to obtain a default. Id. "A default may be entered by the clerk of the court when the clerk

learns, through affidavit or otherwise, that a party against whom affirmative relief has been

sought has failed to plead or otherwise defend as required by the rules." JP Morgan Chase Bank,

N.A. v. M/Y FORTUNA, No. CV 11-2514 (JS) (GRB), 2013 WL 1148920, at *4 (E.D.N.Y. Feb.

12, 2013), report and recommendation adopted, No. 11-CV-2514 (JS) (GRB), 2013 WL 1195420

(E.D.N.Y. Mar. 20, 2013) (quoting <u>Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.</u>, 782 F.2d 329, 334 (2d. Cir. 1986)).

Second, having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b). <u>Green</u>, 420 F.3d at 104. A party's default is considered to be a "concession of all well pleaded allegations of liability," and thus, the Court must construe those allegations as true in determining whether a default judgment is warranted. <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>see also</u> <u>Gesualdi v. Specialty Flooring Sys.</u>, Inc., No. CV 11-5937 (JS)(ARL), 2014 WL 2208195, at *2 (E.D.N.Y. May 28, 2014) <u>report and recommendation adopted as modified</u>, No. 13-CV-5937 (JS)(ARL), 2014 WL 4385417 (E.D.N.Y. Sept. 3, 2014) ("A default also 'effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.'") (quoting <u>Cablevision Sys. New York City Corp. v. Lokshin</u>, 980 F.Supp. 107, 111 (E.D.N.Y. 1997)).

Accordingly, "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." <u>Finkel v. GB Legend Elec. Contractors Corp.</u>, No. 10-CV-1559 (RRM) (JO), 2011 WL 1153678, at *3 (E.D.N.Y. Mar. 11, 2011), <u>report and recommendation adopted</u>, No. 10-CV-1559 (RRM) (JO), 2011 WL 1130487 (E.D.N.Y. Mar. 28, 2011); <u>see also</u> <u>Said v. SBS Electronics, Inc.</u>, No. CV08-3067 (RJD) (JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010) <u>adopted as modified on other grounds</u>, No. 08 CV 3067 (RJD) (JO), 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010) ("The fact that a complaint stands unanswered does not, however, suffice to establish liability on

its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading.")

Further, the allegations with respect to damages are not deemed to be true, and "[t]he district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). In that regard, "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Finkel, 2011 WL 1153678 at *3 (citing Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991)).

**B. As to the Default by the Defendants**

As noted above, the first step in a default judgment analysis is to determine whether the defendant has defaulted. Courts may enter a default "when a party fails to appear after being given notice [of the action]." Brooklyn Navy Yard Dev. Corp. v. Harbor Diesel Fuel Servs., Inc., No. CV 10-5715 ENV VVP, 2014 WL 4364628, at *2 (E.D.N.Y. Aug. 1, 2014) report and recommendation adopted, No. 10-CV-5715 ENV VVP, 2014 WL 4385413 (E.D.N.Y. Sept. 3, 2014) (quoting Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984)).

In the present case, the Court notes the default of both Defendants. With respect to the Defendant Baldwin, on September 7, 2011 the United States Marshal personally served a copy of the original summons, the verified complaint, and the warrant for the arrest of the Serendipity at his principal place of business. (Chase Cert. of Service, Dkt. No. 20, at ¶ 3.) Further, on September 19, 2011, the Plaintiff mailed a copy of these documents to Baldwin's place of business by first class mail. (Id. at ¶ 4.) Finally, on February 1, 2012, the Court issued a certificate of default with respect to Baldwin. (Dkt. No. 30.) He has not responded to these notices or otherwise appeared in this action. Therefore, the Court finds that Baldwin has

received appropriate notice of this action and has defaulted.  <u>Brooklyn Navy Yard Dev. Corp.</u>,

2014 WL 4364628, at *3 (E.D.N.Y. Aug. 1, 2014) ("The entry of a default judgment is

appropriate in this case.  The plaintiff properly notified the defendant of this litigation by serving

the complaint and affidavit on the defendant's agent for service of process, sending the

complaint and affidavit to the New York Secretary of State, and by attempting personal service

on the defendant at its last known address.").

The Court finds that an entry of default is also appropriate with respect to the Serendipity.

Local Admiralty and Maritime Rule C.3 provides that the entry of default is appropriate in an *in*

*rem* admiralty action if the plaintiff satisfies certain notice requirements, including:

> (1) "publication as required in Supplemental Rule C(4) and Local Admiralty Rule
> C.2";
> (2) "service upon the master or other person having custody of the property"; and
> (3) "service under Federal Rule of Civil Procedure 5(b) upon every other person
> who has not appeared in the action and is known to have an interest in the
> property."

Local Maritime Rule C.3.  The Plaintiff must also notify anyone having an ownership interest or

lien on the vessel, as provided for in federal or state registries.  <u>Id.</u> at (b).

Supplemental Rule C(4), in turn, requires the Plaintiff to "promptly . . . give public notice

of the action and arrest in a newspaper designated by court order and having general circulation

in the district."

Local Admiralty Rule C.2 states that "[t]he notice required by Supplemental Rule C(4)

shall be published at least once."  It further provides that the notice should contain:

> (1) the fact and date of the arrest, (2) the caption of the case, (3) the nature of the
> action, (4) the amount demanded, (5) the name of the marshal, (6) the name,
> address, and telephone number of the attorney for the plaintiff, and (7) a statement
> that claimants must file their claims with the clerk of this court within fourteen
> (14) days after notice or first publication (whichever is earlier)  . . . and must
> serve their answers within twenty one (21) days after the filing of their claims.
> The notice shall also state that all interested persons should file claims and

answers within the times so fixed otherwise default will be noted and condemnation ordered.

Local Admiralty Rule C.2.

Here, on May 17, 2013, the Plaintiff filed a notice of this action and the arrest of the Serendipity in Newsday. (Dkt. No. 59.) The notice identified (1) November 15, 2011 as the date that the U.S. Marshal arrested the Serendipity; (ii) the caption of this action; (iii) the nature of the Plaintiff's two claims under the Ship Mortgage Act; (iv) the names and addresses of the Plaintiff and its counsel; and (v) the name of the U.S. Marshal. (Id., Ex. A.) It further stated that any interested parties must file their claims within fourteen days of May 17, 2013, and their answer to the complaint within twenty-one days. (Id.) No claimant interposed any such claim. Accordingly, the Court finds that the Plaintiff has satisfied the notice requirements of Supplemental Rule C and Local Admiralty Rule C.

As the Plaintiff has provided proper notice of its *in rem* claim against the Serendipity, and no claimants have interposed any claims or answers with regard to the Serendipity or otherwise appeared in this action, the Court finds that an entry of default is also appropriate with respect to the Serendipity.

## C. As to the Liability of the Defendants

As noted above, in the second step of the default judgment analysis, the court must construe the factual allegations in the complaint as true, except those relating to damages, and "determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)) (alteration in original).

In the present case, the Plaintiff asserts two claims under the Ship Mortgage Act, 46 USC § 31325: (i) an *in rem* claim against the Serendipity and (ii) an *in personam* claim against

Baldwin. The Court finds that the allegations in the Verified Complaint establish the Defendants' liability for both claims as a matter of law.

## 1. The Ship Mortgage Act

Pursuant to 46 U.S.C. § 31325, a mortgagee may enforce a preferred mortgage on a vessel in two ways. First, the mortgagee may commence "a civil action *in rem* for a documented vessel." 46 U.S.C. § 31325(b)(1). This *in rem* action is filed against the *res* — in other words, the vessel. Therefore, any damages in an *in rem* action are limited to the parties' interest in the boat. Bay Casino, LLC. v. M/V Royal Empress, 20 F. Supp. 2d 440, 447-48 (E.D.N.Y. 1998) ("[T]he *in rem* action is filed against the *res*, the vessel — a maritime lien on the vessel being a prerequisite to an action *in rem*.") (citing Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner, 724 F.2d 1161, 1163 (5th Cir. 1984)); In re Metromedia Fiber Network, Inc., 299 B.R. 251, 271-72 (Bankr. S.D.N.Y. 2003) ("The concept of in rem jurisdiction is that the court has jurisdiction over property, a *res*, and is thereby empowered to adjudicate interests in the *res*."); see also Black's Law Dictionary 900 (4th ed.1951) (*in rem* is defined as a "technical term used to designate proceedings or actions instituted against the thing, in contradistinction to personal actions, which are said to be *in personam*.").

The second method of enforcing a preferred mortgage under the Ship Mortgage Act is by commencing "a civil action *in personam* in admiralty against the mortgagor . . . for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness." 46 U.S.C.A. § 31325 (West). "As its name implies, the *in personam* action is filed against the owner personally." Bay Casino, LLC., 20 F. Supp. 2d at 448. As such, unlike in an *in rem* action, if the proceeds of the sale of the vessel do not satisfy the judgment, the owner remains liable for the balance of the amount. Id. ("[I]n the *in personam* proceeding . . . if the proceeds of

the sale of the vessel do not satisfy the judgment, the owner remains liable for the balance of the amount."); see also Wilmington Trust Co. v. M/V Miss B. Haven V, 760 F. Supp. 2d 364, 366 (S.D.N.Y. 2010) ("It is settled that, by way of an *in personam* proceeding, the mortgagee is entitled to a deficiency judgment if the foreclosure sale does not satisfy its lien and costs.").

Here, the Plaintiff seeks to enforce the First Mortgage using both methods: he asserts both an *in rem* claim against the Serendipity and an *in personam* claim against Baldwin. Thus, in order to be successful on either claim, the Plaintiff must show (a) that it has a valid preferred mortgage under the Ship Mortgage Act and (b) that Baldwin defaulted on the mortgage. The Court will address both issues below.

### a. Validity of the First Mortgage

Under 46 U.S.C. § 31322, a preferred mortgage is a mortgage that (1) "includes the whole of the vessel"; (2) "is filed in substantial compliance with section 31321 of this title"; and (3) "covers a documented vessel."

Section 31321 prescribes the requirements for filing, recording, and discharging a mortgage. It provides that a mortgage must be filed with the U.S. Coast Guard at the vessel's home port in order to be valid. 46 U.S.C. § 31321(a)(1); see also Maryland Nat. Bank v. Vessel Madam Chapel, 46 F.3d 895, 899 (9th Cir. 1995) ("[46 U.S.C.A. § 31321] provides that no sale or mortgage which includes a vessel of the United States is valid against any person other than the grantor or mortgage owner and anyone with actual notice until the bill of sale or mortgage is recorded with the Coast Guard at the vessel's home port.").

In addition, in order to be validly recorded, the mortgage must:

(1) identify the vessel;
(2) state the name and address of each party to the instrument;

(3) state . . . the amount of the direct or contingent obligations (in one or more units of account as agreed to by the parties) that is or may become secured by the mortgage, excluding interest, expenses, and fees;
(4) state the interest of the grantor, mortgagor, or assignor in the vessel;
(5) state the interest sold, conveyed, mortgaged, or assigned; and
(6) be signed and acknowledged.

46 U.S.C. § 31321.

In the present case, the Court finds that the First Mortgage is a "preferred mortgage" subject to the Ship Mortgage Act because it: (1) identifies the "mortgaged vessel" as the "Serendipity" and includes its hull number and port of documentation; (2) identifies the Defendant Baldwin as the mortgagor and the Plaintiff as the mortgagee, and it lists their addresses; (3) identifies the total amount of the mortgage as $240,000; (4) identifies Baldwin as the owner of the Serendipity; (5) grants the Plaintiff a mortgage "covering the Whole Vessel"; and (6) is signed by Baldwin and properly acknowledged by a notary public. (Verified Compl., Ex. B).  Moreover, the Plaintiff properly filed the First Mortgage with the U.S. Coast Guard National Vessel Documentation Center.  (Id. at ¶ 11).  Thus, the Plaintiff has a valid preferred mortgage under the Ship Mortgage Act.

### b. The Defaults by Baldwin

Construing the allegations in the verified complaint as true, the Court finds that the Plaintiff has sufficiently alleged that Baldwin has defaulted on his obligations under the First Mortgage.

The First Mortgage states, "If you failed the Creditor according to the payment schedule in the [Agreement] or if you break any of the agreements in this mortgage or in the [Agreement] . . . , the Creditor can take the Vessel and other mortgage goods from you and sell them as provided in the [Agreement]."  (Verified Compl., Ex. B)  Thus, the First Mortgage explicitly

incorporates the conditions of the Agreement and makes clear that a breach of any term of the Agreement also results in a breach of the First Mortgage.

In that regard, the Plaintiff alleges that Baldwin breached numerous provisions of the Agreement. In particular, the Agreement requires Balwin to pay the Plaintiff $240,000, the principal amount of the loan, plus an interest rate of six percent a year. (Verified Compl., Ex. A, at 1.) The term of the loan is 240 months, and the Plaintiff is required to make monthly payments of $1,719.43 beginning on June 13, 2005. (Id.) The Plaintiff alleges that Baldwin stopped making monthly payments in December 2010. (Verified Compl. at ¶ 19.) At that point, the Plaintiff had not paid $204,810.93 of the principal amount due under the loan. (Curtis Aff. at ¶ 19.) Thus, the Plaintiff has established that Baldwin breached the payment terms of the Agreement. (Verified Compl. at ¶¶ 24–25.)

The Plaintiff alleges that Baldwin breached additional terms of the Agreement, which require him to:

> (i) "defend [the Plaintiff's] interests in the property against claims made by anyone else.";
> (ii) "provide [the Plaintiff] with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else";
> (iii) "keep the Property in your possession in good condition and repair";
> (iv) "not attempt to sell the Property . . . or otherwise transfer any right in the Property to anyone else, without [the Plaintiff's] prior written consent";
> (v) "notify us of any loss or damage to the Property"; and
> (vi) "buy property insurance on the Property protecting against loss and physical damage."

(Verified Compl., Ex. A, at 2.) The Plaintiff alleges that Baldwin breached these terms by first failing to inform the Plaintiff in September 2009 that the Serendipity had suffered significant water damage. (Verified Compl. at ¶ 17.) Second, the Plaintiff alleges that Baldwin did not inform the Plaintiff that St. Joseph had filed a mechanics lien on the Serendipity. (Id.) Third, the Plaintiff asserts that Baldwin committed a breach by failing to inform the Plaintiff or obtain its

15

consent to St. Joseph filing a lien against the Serendipity and attempting to sell it. (Id. at ¶¶ 14–17.) Finally, the Plaintiff alleges that Baldwin failed to procure property insurance for the Serendipity as required under the Agreement and the First Mortgage. (Id. at ¶ 17.)

Construing these allegations as true, the Plaintiff has established that Baldwin defaulted on its obligations under the Mortgage and the Agreement, and therefore is entitled to judgment on both its *in rem* and *in personam* claims. See, e.g., JP Morgan Chase Bank, N.A., 2013 WL 1148920 at *6 ("[The mortgagor] defaulted under the terms of the Mortgage by, among other things, failing to make monthly installment payments when due . . . These allegations are uncontested, and establish liability on the Mortgage *in rem* as a matter of law."); Bogle v. M/Y Cajun Princess, 2010 WL 1949550 (S.D. Fla. 2010) (finding that a lien holder was entitled to summary judgment where there were no factual issues as to whether the preferred mortgage lien was valid; the current outstanding mortgage indebtedness secured by the vessel for principal and interest was $7,110,525.80**;** and the vessel owner conceded they were in default for nonpayment).

**D. As to the Damages Requested by the Plaintiff**

Having established the Defendants' default and liability to the Plaintiff, the Court now turns to the question of what constitutes an appropriate recovery.

As noted above, the allegations of a complaint relating to damages are not accepted as true; rather, "[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." JP Morgan Chase Bank, N.A., 2013 WL 1148920, at *7 (quoting Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155). "Damages may be proven through an evidentiary hearing or through affidavits and other documentary submissions that provide a factual basis for determining the amount of damages to be awarded." Brooklyn Navy Yard Dev.,

2014 WL 4364628 at *5; <u>see also</u> <u>JP Morgan Chase Bank, N.A.</u>, 2013 WL 1148920 at *7 (same).

In the present case, the Plaintiff seeks two remedies: (i) a judgment in the amount of $340,231.95 plus additional interest accrued; and (ii) an order from the Court directing the United States Marshal to sell the Serendipity and disperse the proceeds of the sale to the Plaintiff. (Chase Decl. at ¶ 6.) The Court will address each remedy in turn.

### 1. Monetary Damages

The Plaintiff asserts that it is entitled to monetary damages in the total amount of $340,231.95 plus additional interest accrued since October 24, 2014, the date when the Plaintiff made the present motion. In support of this request, the Plaintiff relies on the affidavit of April Curtis ("Curtis"), an Assistant Vice President of the Plaintiff, and a copy of the accounting statements for which payment is sought. According to Curtis, as of October 24, 2014, the Plaintiff is owed: (a) $204,810.93 in remaining principal under the First Mortgage; (b) interest and other charges totaling $48,311.42; (c) attorneys' fees in the amount of $35,164.58 and court costs in the amount of $1,115.06; (d) the $15,309.94 required to settle the mechanics lien filed by St. Joseph; (e) $2,598.70 in survey fees; and (f) $32,921.32 related to the Plaintiff's efforts to arrest the Serendipity. (Curtis Aff. 6–25.). The Court will assess each category of damages claimed by the Plaintiff below.

### a. The Remaining Principal Due Under the First Mortgage

The principal amount of the loan made by the Plaintiff to Baldwin was $240,000. (<u>Id.</u>) Pursuant to the Agreement, the Baldwin is required to make monthly payments of $1,719.43 for 240 months beginning on June 13, 2005. (<u>Id.</u> at 2.) Construing the allegations in the verified complaint as true, Baldwin stopped making monthly payment in December 2010, at which point

there was still $204,810.93 in principal remaining due on the loan. (Verified Compl. at ¶ 19; Curtis Aff. at ¶ 18.)

The Agreement states that in the event of a default, the Plaintiff "may require [Baldwin] to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, credit service charges, and all other agreed charges." (Verified Compl., Ex. A, at 2.)

Thus, Plaintiff is clearly entitled to recover the unpaid principal of $204,810.93 due under the First Mortgage.

### b. Interest Due Under the First Mortgage

"Generally, district courts have broad discretion in determining both the interest rate to be used and the date from which the calculations will run for prejudgment interest in admiralty cases." Brooklyn Navy Yard Dev. Corp., 2014 WL 4364628, at *7; see also Am. Oil Trading, Inc. v. M/V SAVA, 47 F. Supp. 2d 348, 353 (E.D.N.Y. 1999) ("In admiralty cases prejudgment interest 'should be granted in the absence of exceptional circumstances.'") (citing Independent Bulk Transp., Inc. v. VESSEL "MORANIA ABACO", 676 F.2d 23, 27 (2d Cir. 1982)).

The Agreement provides that "after your default and we demand payment, we will earn finance charges on the unpaid balance of 6.0 % per year." (Verified Compl., Ex. A, at 1.) As noted above, on December 1, 2010 when Baldwin stopped making monthly payments on the First Mortgage, there was an unpaid principal balance on the loan of $204,810.93. (Verified Compl. at ¶ 19). Thus, under the Agreement, Baldwin must pay the Plaintiff interest at the rate of 6 % per year on the unpaid principal amount of $204,810.93, which the Court calculates to accrue at a rate of $33.67 per day. From December 1, 2010 — the date of default — to April

18

24, 2015 — the date of this Order — the Court finds that $54,074.02 in pre-judgment interest has accrued under the Agreement and the First Mortgage.

The Plaintiff also states that Baldwin owes it $470 in late charges, collection fees, and "bad check" fees. However, the Plaintiff points to no contractual provisions that provide for these fees, nor any documentation accounting for them. As the Plaintiff has not adequately explained these charges, the Court does not credit them in its damages calculation. See Brooklyn Navy Yard Dev. Corp., 2014 WL 4364628 at *6 ("As the plaintiff has provided no proof to establish that the amount of $10,233.45 constitutes damages for breach of contract or is a proper subject of its maritime lien, the court finds no basis for including this amount in the calculation of damages."); JP Morgan Chase Bank, N.A., 2013 WL 1148920, at *8 ("I have not credited plaintiff with $1,450 sought in 'late charges,' as this figure is not adequately explained in the documentation.").

Accordingly, the Court finds that as of the date of this Order, the Plaintiff is entitled to pre-judgment interest in the amount of $54,074.02, with interest accruing at $33.67 per day.

### c. Attorneys' Fees

The Plaintiff also seeks an award of $35,164.58 in attorneys' fees and court costs in the amount of $1,115.06. (Curtis Aff. ¶¶ 22–24.) In this Circuit, '"the general rule [is] . . . that the award of fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith.'" Am. Nat. Fire Ins. Co. v. Kenealy, 72 F.3d 264, 270 (2d Cir. 1995) (quoting Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 309 (2d Cir. 1987)); see also Great Lakes Reinsurance (UK) PLC v. Fortelni, 951 F. Supp. 2d 385, 389-90 (E.D.N.Y. 2013) (Spatt, J) (same). "Bad faith" has been found where a litigant's opponent has "commenced or conducted an action vexatiously, wantonly, or for oppressive reasons."

Brooklyn Navy Yard Dev. Corp., 2014 WL 4364628, at *7; see also Dolco Inv., Ltd. v.
Moonriver Dev., Ltd., 526 F. Supp. 2d 451, 453 (S.D.N.Y. 2007) ("[W]e have declined to uphold
awards under the bad-faith exception absent both clear evidence that the challenged actions are
entirely without color and are taken for reasons of harassment or delay or for other improper
purposes and a high degree of specificity in the factual findings of the lower courts.") (quoting
Dow Chemical Pac., Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 344 (2d Cir. 1986)).

In the present case, the Court does not see any indication, nor has the Plaintiff offered
such proof, that the Defendants have acted in bad faith by not responding to the Plaintiff's claim.
See Am. Nat. Fire Ins. Co. v. Kenealy, 72 F.3d 264, 271 (2d Cir. 1995) ("There is no evidence
that American National sought to mislead the Kenealys on the issue of the agent's authority, and
'bad faith' certainly requires more than a failure to police an agent's representations."); Brooklyn
Navy Yard Dev. Corp., 2014 WL 4364628 at *7 (finding that the defendants in a default action
did not exhibit any evidence of bad faith).

In the absence of bad faith, attorneys' fees and court costs may still be recoverable in an
admiralty case where a contract or a statute applicable to the plaintiff's claims authorizes such
fees. Apex Mar. Co. v. Furniture, Inc., No. 11-CV-5365 (ENV) (RER), 2013 WL 2444151, at *4
(E.D.N.Y. June 5, 2013) ("The general rule is that the award of fees and expenses in admiralty
actions is discretionary with the district judge upon a finding of bad faith[,] . . . [but] [c]ourts
may also award fees pursuant to an applicable statute or contract between the parties.") (citation
and internal quotation marks omitted); see also Eurosteel Corp. v. M/V KOGGEGRACHT, No.
01CIV.7731(DLC)(FM), 2003 WL 470575, at *4 (S.D.N.Y. Jan. 20, 2003), report and
recommendation adopted, No. 01 CIV. 7731(DLC), 2003 WL 1872652 (S.D.N.Y. Apr. 11, 2003)
("It is the normal rule 'both within and outside maritime law' that 'in the absence of statute or

contractual authorization, attorney's fees are not generally recoverable either as part of costs or of damages.'") (quoting <u>Sea-Land Service, Inc. v. Able Shipping</u>, Ltd., 1995 WL 75479, *2 (S.D.N.Y. Feb 22, 1995)).

The Plaintiff does not allege any statutory claims permitting attorneys' fees or court costs. Therefore, the Court will look at the Agreement and the First Mortgage to determine whether they provide for such fees and costs.

When interpreting contractual provisions related to attorneys' fees, the Second Circuit has stated that "courts 'should not infer a party's intention' to provide counsel fees as damages for a breach of contract 'unless the intention to do so is unmistakably clear' from the language of the contract.'" <u>Bank of New York Trust Co. v. Franklin Advisers, Inc.</u>, 726 F.3d 269, 283 (2d Cir. 2013) (quoting <u>Oscar Gruss & Son, Inc.</u>, 337 F.3d at 199).

In the present case, neither the Agreement, nor the First Mortgage, unequivocally states that the Plaintiff may recover attorneys' fees or court costs. The First Mortgage provides for the repossession and sale of the Serendipity but does not refer to attorneys' fees or court costs. (Verified Compl., Ex. B.) Similarly, the Agreement required Baldwin to pay "collection costs" in the event of a default but does not specifically refer to attorneys' fees or court costs. (Verified Compl., Ex. A, at 2.) Moreover, the Plaintiff provides no basis in the Agreement, nor any legal authority, to support its contention that it is entitled to attorneys' fees and court costs under the Agreement. Therefore, the Plaintiff's request for attorneys' fees and court costs is denied.

### d. The Cost of Settling the Mechanic's Lien

St. Joseph filed a maritime lien for necessaries pursuant to 46 U.S.C.A. § 31301(4) against the Serendipity seeking $68,000 because Baldwin allegedly failed to pay St. Joseph for repairs that it performed on the Serendipity in September 2009. In her affidavit, Curtis asserts

that the Plaintiff had to pay $15,309.94 to St. Joseph to settle its lien on the Serendipity. (Curtis Aff. ¶ 15.)

The Agreement provides that the Plaintiff "may pay . . . [a] lien . . . if [Baldwin] has not done so . . . . Any amount we pay will be added to the amount you owe us and will be due immediately." (Verified Compl., Ex. A, at 2.) Based on the clear language of the Agreement, the Plaintiff may recover the $15,309.94 it paid St. Joseph to settle its lien on the Serendipity.

### e. The Survey Fees

The Plaintiff also seeks to recover $2,598.70 in fees and expenses related to a survey conducted by the Castlerock Risk Services, LLC on the Serendipity. In her affidavit, Curtis states this survey was necessary to "dispute the merits of the lien claims of [St. Joseph] . . . and to support a[] potential claim for conversion of the vessel against St. Joseph." (Id. at ¶ 11.) To that end, the Plaintiff attaches an invoice from Castle Risk Services LLC. Neither the invoice, nor the affidavit by Curtis, adequately explain why the Plaintiff had to conduct a survey. Nor does the Plaintiff specify under what provision of the Agreement it is supposedly entitled to these fees. Without more, the Court declines to credit the Plaintiff with damages related to survey costs. See Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.") (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)); Brooklyn Navy Yard Dev. Corp., 2014 WL 4364628 ("It is the plaintiff's burden to establish entitlement to recovery.").

### f. Costs Related to the Arrest of the Serendipity

Finally, the Plaintiff seeks costs related to executing the arrest of the Serendipity. Pursuant to Supplemental Rule C, if a plaintiff asserts an *in rem* action, the court must, upon

application of the plaintiff, "issue a warrant for the arrest of the property that is the subject of the action." If the Court issues a warrant of arrest, and the United States Marshal deposits the property in the custody of a substitute custodian, then the plaintiff is required to give public notice of the arrest in a newspaper "having general circulation in the district." Supplemental Rule C(3)(c), (4).

On August 25, 2011, the Court issued an arrest warrant for the Serendipity, which the United States Marshals executed on December 5, 2011. (Dkt. No. 25.) Pursuant to the arrest warrant, the Serendipity was placed into the custody of Grande Yachts International and docked at the Brewer Yacht Yard in Greenport, New York, where it has remained since the United States Marshal detained it. (Curtis Aff., Ex. B.) On May 17, 2013, the Plaintiff filed a notice of this action and arrest in Newsday. (Dkt. No. 59.)

The Plaintiff paid $452.00 to publish the notice of arrest in Newsday. (Curtis Aff. at ¶ 16.) In addition, through October 2014, the Plaintiff had paid Grande Yachts International Marine a total of $32,469.32 in custodial fees, with an additional $810 accruing each month. (Id.; see also Curtis Aff., Ex. B.) As of the date of this Order, the Serendipity has been in storage for another five months, representing an additional $4,050 in custodial fees. Thus, to date, the Plaintiff has paid, together with the publication fee, a total of $36,991.32 in fees related to the arrest and storage of the Serendipity.

The Agreement states that in the event of a default, Baldwin is required to pay the Plaintiff its "costs for collecting amounts owing, including, without limitation, fees for repossession, repair, storage and sale of the Property securing the Contract." (Verified Compl., Ex. A, at 2.)

The Court finds that the $36,991.32 fees associated with the storage and arrest of the Serendipity fall under this category, and this sum is therefore recoverable by the Plaintiff.

### g. Total Award

For the foregoing reasons, the Court finds that the Plaintiff is entitled to a judgment against the Defendant Baldwin in the total amount of $311,186.11, with interest accruing at the rate of $33.67 per day.

### 2. The Sale of the Serendipity

In addition to a judgment for monetary damages, the Plaintiff seeks an order directing the U.S. Marshal to sell the Serendipity.

The Ship Mortgage Act sets forth a procedure for the foreclosure of a preferred ship's mortgage. Under this procedure, the court can direct the judicial sale of the vessel. See Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd., 982 F.2d 765, 768 (2d Cir. 1992) ("[T]he maritime lien is for the benefit of both the ship and its creditors . . . . '[I]t gives the creditor a special property in the ship, which subsists from the moment the debt arises, and it gives him a right to have the ship sold that his debt may be paid out of the proceeds of the sale.'") (quoting The Poznan, 9 F.2d 838, 842 (2d Cir. 1925), rev'd on other grounds, 274 U.S. 117, 47 S. Ct. 482, 71 L. Ed. 955 (1927)).

Pursuant to 46 U.S.C. § 31326, once the vessel is sold, the *in rem* action brought by the mortgagee to enforce the preferred mortgage is extinguished. 46 U.S.C.A. § 31326 (West) ("When a vessel is sold by order of a district court in a civil action *in rem* brought to enforce a preferred mortgage lien or a maritime lien, any claim in the vessel existing on the date of sale is terminated, including a possessory common law lien of which a person is deprived under section 31325(e)(2) of this title, and the vessel is sold free of all those claims.").

If the proceeds from the sale do not satisfy the mortgagee's claim, then the mortgagee is entitled to a final judgment against the debtor for the deficiency. See Walter E. Heller & Co. v. O/S Sonny V., 595 F.2d 968, 971 (5th Cir. 1979) ("'The Ship Mortgage Act, when read together with the statutes delineating the judicial sale procedure in the federal courts forms a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency adjudged against the debtor *[i]n personam*.'"); see also Wilmington Trust Co. v. M/V Miss B. Haven V, 760 F. Supp. 2d 364, 366 (S.D.N.Y. 2010) ("It is settled that, by way of an *in personam* proceeding, the mortgagee is entitled to a deficiency judgment if the foreclosure sale does not satisfy its lien and costs.").

Accordingly, the Court grants the Plaintiff's request and directs the United States Marshal to sell the Serendipity and release the proceeds from the sale to the Plaintiff. Further, if the sale does not satisfy the $311,186.11 judgment, then the Plaintiff is entitled to a final judgment against the Defendant Baldwin for the amount of any deficiency remaining after a judicial sale of the Serendipity. See Branch Banking & Trust Co. v. Pair A Dice, No. 8:10-CV-291-T-33 (EAJ), 2010 WL 3467468, at *2 (M.D. Fla. Sept. 1, 2010) ("BB & T is entitled to a judgment against Pair A Dice in the amount of $20,585,664.99 as of August 9, 2010, and with interest accruing in the amount of $4,186.30 per diem . . . . Further, BB & T is entitled to a final default judgment against Mr. Marshall for the amount of any deficiency remaining after a judicial sale of Pair A Dice.").

## III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56 is denied without prejudice, and it is further

**ORDERED**, that the Plaintiff's motion for default judgment pursuant to Fed. R. Civ. P. 55 is granted in the amount of $311,186.11, with interest accruing at the rate of $33.67 per day, and it is further

**ORDERED**, that the United States Marshal is directed to sell the Serendipity in accordance with the Supplemental and Local Admiralty Rules and release the proceeds of the sale to the Plaintiff, and it is further

**ORDERED**, that the Plaintiff is entitled to a final default judgment against Baldwin in the amount of any deficiency remaining after a judicial sale of the Serendipity, and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
April 24, 2015

/s/ Arthur D. Spatt
ARTHUR D. SPATT
United States District Judge